United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTED KNIGHT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION (IBM),<br><br>Defendant. | Case No. 19-cv-01206-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY PENDING *INTER PARTES REVIEW***<br><br>Docket No. 99 |

## I.     INTRODUCTION

On July 17, 2020, Defendant International Business Machines Corporation ("IBM") filed a motion to stay this litigation pending the final resolution of the Patent and Trademark Office's *inter partes review* ("IPR") of all the asserted claims of the patent-in-suit.  Docket No. 99 ("Mot."); *see also* Docket No. 99–2 (notice of institution of IPR proceedings regarding '473 patent).  For the reasons discussed below, the Court **GRANTS** IBM's motion.

## II.     BACKGROUND

Plaintiff Trusted Knight Corporation ("Trusted Knight") brought this action against IBM, accusing IBM of infringing Trusted Knight's United States Patent No. 9,503,473 ("the '473 Patent"), which issued on November 22, 2016.  *See* Docket No. 1.  The '473 patent is entitled "Apparatus, System, and Method for Protecting Against Keylogging Malware," and it "relates to systems and methods for preventing key logger malware that utilizes form grabbing techniques to steal financial and identity information from users' browsers."  *See* '473 Patent at 1:21–24.  The patent contends that "[k]ey logging is a method of capturing keyboard input to a computer or computing device," which "is a common technique for obtaining passwords and sensitive

information using unauthorized software." *Id.* at 1:50–53.  This is the second patent infringement case between the parties, as Trusted Knight explains: "The first case involved U.S. Patent No. 8,316,445 ('the '445 Patent') which is an ancestor of the '473 Patent.  The '473 Patent incorporates by reference the entire disclosure of the '445 Patent."  *See* Opening Claim Construction Brief ("Opening Brief") at 4, Docket No. 62.  The Court has not adjudicated any substantive motions in this case, but it did issue a claim construction order on July 2, 2020 (construing one term), *see* Docket No. 91, and referred a discovery dispute to Judge Kim shortly thereafter, *see* Docket No. 94.

### III.     DISCUSSION

A.     Legal Standard

Courts have inherent power to manage their dockets, including the discretion to grant a stay pending concurrent proceedings before the PTO.  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed Cir. 1988); *see also Evolutionary Intelligence, LLC v. Millennial Media, Inc.*, No. 5:13-CV-04206 EJD, 2014 WL 2738501, at *2 (N.D. Cal. Jun. 11, 2014).  "A stay is particularly justified where the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues."  *Evolutionary Intelligence*, 2014 WL 2738501 at *2 (citing *In re Cygnus Telecomm. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005)).

Courts traditionally consider three main factors in determining whether to stay a case pending the conclusion of IPR proceedings: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  *Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D. Cal. 2006) (citation omitted); *see also Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575 EMC, 2014 WL 3107447, at *3 (N.D. Cal. July 3, 2014). "The party seeking the stay bears the burden of persuading the court that a stay is appropriate."  *Evolutionary Intelligence*, 2014 WL

United States District Court
Northern District of California

2738501, at \*3 (citing *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).[1]

B.    Analysis

    1.    First Factor – Stage of Litigation

        IBM contends that this action is still in its the early stages, which weighs in favor of granting a stay.  Trusted Knight argues that the advanced stage of this litigation weighs against a stay.  On the one hand, discovery is still ongoing with much remaining, and this Court has yet to set a discovery cutoff.  But on the other hand, claim construction has already occurred.  *See* Docket No. 91 ("Order Re: Claim Construction").  Thus, the case is not exactly in the "early" stages or the "advanced" stages; to the contrary, it is somewhere in between.

        Many cases emphasize that—where discovery has not yet occurred—the first factor weighs in favor of a stay.  *See, e.g.*, *Aavid Thermalloy LLC v. Cooler Master, Ltd.*, No. C 17-05363 JSW, 2019 WL 4009166, at \*2 (N.D. Cal. Aug. 26, 2019) (first citing *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C-94-20775 RPA (EAI), 1995 WL 20470, at \*2 (N.D. Cal. Jan. 13, 1995) (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation); and then citing *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial)).  In one case in which "[t]he parties and courts ha[d] already invested significant time and effort into these matters; a claim construction order ha[d] been issued and the close of fact discovery [wa]s fast approaching," the court concluded that the first factor still weighed in favor of a stay because "the parties have yet to engage in the significant and costly work of conducting expert discovery and preparing summary judgment motions."  *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-

---

[1] IBM includes a fourth factor: "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and the court."  Mot. at 4 (quoting *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1309 (Fed. Cir. 2014)).  However, it appears that factor is specific to the standard applied when a PTAC petition seeks post-grant review of an alleged covered business method (CBM) patent, and that courts still apply the three-factor test to decide whether to stay proceedings pending IPR.  *See, e.g.*, *Aavid Thermalloy LLC v. Cooler Master, Ltd.*, No. C 17-05363 JSW, 2019 WL 4009166, at \*1 (N.D. Cal. Aug. 26, 2019) ("The [four] factors are similar to the factors applied when a court evaluates a motion to stay in light of *inter partes review* or reexamination by the PTO.").

United States District Court
Northern District of California

United States District Court
Northern District of California

CV-01356-EJD, 2014 WL 116340, at *3–4 (N.D. Cal. Jan. 13, 2014); *see also TAS Energy, Inc. v. San Diego Gas & Elec. Co.*, No. 12CV2777-GPC BGS, 2014 WL 794215, at *3 (S.D. Cal. Feb. 26, 2014) ("While the case is not in its early stages, it is in the midst of discovery and no trial date has been set.  Moreover, significant amount of work still remains such as expert discovery, summary judgment motions and trial.  Therefore, the Court concludes that at this stage of the litigation, a stay would not be improper.").

Even the cases cited by Trusted Knight ultimately support the idea that where discovery has not yet occurred, the first factor favors a stay.  *See, e.g.*, *Interwoven, Inc. v. Vertical Computer Sys., Inc.*, No. C 10-04645 RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012) (finding first factor weighed against stay where claim construction had occurred but also emphasizing that "[d]iscovery is well underway"); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014) (finding first factor weighed against stay where claim construction had occurred but noting that a trial date had been set and noting that discovery was "well underway"); *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007) (denying stay where defendant delayed in seeking it and trial date had been set); *Carl Zeiss A.G. v. Nikon Corp.*, No. 217CV07083RGKMRW, 2018 WL 5081479, at *2 (C.D. Cal. Oct. 16, 2018) ("When cases are in the initial stages of litigation and there has been little or no discovery, policy favors granting a motion to stay pending IPR.").

Accordingly, given that no discovery has yet occurred, no motions for summary judgment have been prepared or filed, and no trial date has yet been set, notwithstanding the fact that claim construction has already occurred, this factor favors a stay.

2.      Second Factor – Simplification of Issues

IBM contends that "[t]he instituted IPR trial involves all of the claims that Plaintiff . . . has asserted against IBM."  Mot. at 3.  However, in its Opposition, Trusted Knight argues that "the IPR proceeding does not meaningfully implicate all of the claims of the '473 Patent," which weighs against a stay.  Opp. at 12.  It further clarifies:

Although Trusted Knight did not list claims 7 and 18 [of which IBM

4

failed to secure IPR review] in its preliminary infringement contentions served in October 2019, Trusted Knight's contentions were expressly "based on Trusted Knight's current understanding," and Trusted Knight "expressly reserve[d] the right to modify, amend, retract, and/or supplement" its infringement contentions "as the case progresses based on information obtained through discovery." Discovery has shown that IBM's accused products infringe claims 7 and 18, both of which are accused by the infringement allegations in Trusted Knight's complaint.

*Id.* at 13 n.8. (citing Docket No. 1 at ¶¶ 38, 43, 44, and Prayer for Relief). Accordingly, Trusted Knight contends that the second factor weighs against a stay. *Id.* at 12. It adds: "Because claims 7 and 18 broadly cover the anti-form grabbing capabilities covered by the other claims of the '473 Patent, the Court and parties will face the same scope of discovery, potential dispositive motions, and damages considerations that they already face, regardless of the outcome of the IPR proceeding." *Id.* at 15.

However, even if Trusted Knight does assert infringement of claims 7 and 18 (and the Court permits amendment of the infringement contentions), if "the PTO modifies or cancels [even] some . . . of the claims subject to review, both the court and [the] parties benefit because the scope of this case may be narrowed and further proceedings will be streamlined" or even obviated entirely. *Evolutionary Intelligence*, 2014 WL 2738501, at *4. Moreover, even if the IPR proceedings do "not result in any cancelled or modified claims, this [C]ourt will receive the benefit of the PTO's expertise and guidance on these claims." *Id.* (citation omitted). In addition, the case will be simplified because IBM would be barred from raising any arguments it raised or could have raised in the PTO proceeding. *Aavid Thermalloy*, 2019 WL 4009166, at *3 ("As has been repeatedly stated in this District, even if all the asserted claims survive IPR, the case could still be simplified because Defendant would be bound by the estoppel provisions for IPR and thus could not raise before this Court any arguments that it raised or reasonably could have raised at the PTO in its petition." (internal quotation marks and brackets omitted)).

In addition, Trusted Knight notes that the PTAB rejected IBM's challenge (on anticipation grounds) to claims 7 and 18. Opp. at 4, 14. It contends that "[b]ecause the PTAB rejected those unsupported theories and arguments, IBM has no recourse to challenge validity of claims 7 and 18 through its IPR Petition." *Id.* at 14 (citing 35 U.S.C. § 312(a)(3); *Henny Penny Corp. v.*

United States District Court
Northern District of California

1   *Frymaster LLC*, 938 F.3d 1324, 1330-31 (Fed. Cir. 2019) ("an IPR petitioner may not raise in

2   reply 'an entirely new rationale'" as "[i]t is of the utmost importance that petitioners in the IPR

3   proceedings adhere to the requirement that the initial petition identify 'with particularity' the

4   'evidence that supports the grounds for the challenge to each claim'")).  However, as IBM asserts:

> IBM is not foreclosed from continuing to argue that [the '445 patent
> is prior art], and it is no certainty that the PTAB will not be swayed
> to IBM's position [the claims 7 and 18 should be invalidated] with
> the benefit of additional briefing and a hearing.  Although the PTAB
> found that IBM had "not shown a reasonable likelihood of
> prevailing on this ground of patentability" at the institution stage, it
> is an unavoidable fact that this ground is part of the IPR proceeding
> and will be addressed in the final written decision. If the PTAB sides
> with IBM, every single claim of the '473 patent will be invalid.

10   Reply at 3 (internal citations omitted).  Accordingly, even if such an outcome is not likely, it is

11   possible that "every single claim of the '473 patent will be invalid."  *Id.*  Thus, because IPR

12   proceedings have been instituted against all *currently* challenged claims, because IBM may

13   ultimately prevail in IPR on invalidating *all* claims of the '473 patent, and because Trusted Knight

14   would need to prevail on a motion to amend its infringement contentions, this factor also tips in

15   favor of a stay.

16         3.    Third Factor – Prejudice

17         In assessing "whether a stay will unduly prejudice or tactically disadvantage the

18   nonmoving party[,] courts assess four subfactors: '(1) the timing of the petition for review; (2) the

19   timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of

20   the parties.'"  *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 836714, at *2

21   (N.D. Cal. Feb. 20, 2020) (quoting *Uniloc USA Inc. v. LG Elecs. U.S.A. Inc.*, 2019 WL 1905161,

22   at *5 (N.D. Cal. Apr. 29, 2019)).

23         With respect to the timing of IBM's petition, Trusted Knight contends that IBM would

24   have been aware of the issuance of the '473 patent in November 2016; it further contends that

25   "[r]ather than file its IPR Petition when the '473 Patent issued, IBM waited more than four years

26    . . . before filing its IPR Petition."  Opp. at 9.  IBM forcefully denies that its knowledge goes back

27   that far and also notes that 35 U.S.C. § 315(b) explicitly permits a party one year from the date of

28   service of a complaint to file for IPR.  Reply at 9 (citing 35 U.S.C. § 315(b)).  IBM represents that

United States District Court
Northern District of California

1   it filed an IPR more than two months before the statutory bar date.  *Id.*  Importantly, both of the

2   cases relied upon by Trusted Knight for the proposition that  "[c]ourts routinely recognize that this

3   type of delay suggests an effort by defendants to gain a tactical advantage and weighs against

4   issuing a stay in these circumstances," Opp. at 9 (citing *Esco Corp. v. Berkeley Forge & Tool,*

5   *Inc.*, No. C 09–1635 SBA, 2009 WL 3078463 (N.D. Cal. Sept. 28,2009); *Belden Techs. Inc. v.*

6   *Superior Essex Communs. LP*, No. 08-63, 2010 WL 3522327 (D. Del. Sept. 2, 2010)), predate the

7   effective date of 35 U.S.C. § 315(b), which permits parties one year from service of a complaint to

8   file an IPR.  *See* 35 U.S.C. § 315(b) (effective date September 16, 2012).  Moreover, courts in this

9   District have concluded that "waiting until after receiving infringement contentions to analyze the

10  claims alleged and then filing petitions for review does not cause undue prejudice."  *Int'l Test*

11  *Sols., Inc. v. Mipox Int'l Corp.*, No. 16-CV-00791-RS, 2017 WL 1316549, at *3 (N.D. Cal. Apr.

12  10, 2017) (quoting *Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-CV-02013-JST, 2014

13  WL 5021100, at *4 (N.D. Cal. Oct. 7, 2014)).

14          With respect to the timing of IBM's petition to stay, IBM filed its motion just one week

15  after the PTAB instituted its IPR.  In response, Trusted Knight asserts that IBM (1) filed the

16  motion to stay in order to "avoid it obligations" under Judge Kim's discovery order, and (2)

17  waited until after claim construction to file the motion to stay in order to see how the "overall

18  trajectory" of litigation would develop.  Opp. at 10 (also conceding that "that IBM moved for a

19  stay reasonably promptly after the PTAB instituted review of the '473 Patent").  However, what

20  Trusted Knight attempts to frame as bad faith (the avoidance of discovery obligations), could just

21  as readily (if not more readily) be understood as attempting to conserve the parties' and the

22  Court's resources by proceeding in IPR while putting this litigation on hold.  Additionally, aside

23  from Trusted Knight's arguments, there is nothing in the record to suggest that IBM has a bad

24  faith reason for seeking to delay the discovery process.  This Court has, in numerous cases,

25  granted stays only when IPR is instituted, generally denying requests for stays prior thereto.

26          Turning next to the status of review proceedings, those proceedings are in their early

27  stages.  As to this sub-factor, Trusted Knight reasserts its argument that IPR proceedings are "not

28  dispositive of the matters before this Court" because the proceedings will not address all claims of

7

the '473 patent.  Opp. at 10.  However, as discussed above, those arguments are unpersuasive for several reasons.  In addition, Trusted Knight contends that "the stay, if granted, would almost certainly last many years" because of the time needed to complete the IPR process and any related appeals, and therefore that "a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents."  Opp. at 10 (quoting *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09–865–LPS, 2010 WL 5149351, at *4 (D. Del. Dec. 13, 2010)).  However, "[c]ourts have repeatedly found no undue prejudice unless the patentee makes a specific showing of prejudice beyond the delay necessarily inherent in any stay," and thus, the "delay inherent in the reexamination process does not constitute, by itself, undue prejudice."  *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1029 (N.D. Cal. 2014) (internal citations and quotation marks omitted).

Finally, the Court must examine the relationship between the parties.  This is Trusted Knight's strongest point; it contends that the two companies are direct competitors that produce products responsive to "on-going threats endangering a massive number of sensitive online transactions."  Opp. at 11.  Indeed, "[c]ourts are generally reluctant to stay proceedings where the parties are direct competitors."  *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *3 (N.D. Cal. Jan. 13, 2014) (quoting *Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011)).  "[I]nfringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.  Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude."  *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011).

In response, IBM first responds that IBM and Trusted Knight are not direct competitors.  *See* Reply at 12.  Next, IBM contends that, even if the two companies are treated as direct competitors, if Trusted Knight feared irreparable harm, it should have moved for a preliminary injunction.  Reply at 12–13.  However, "several courts have rejected this argument, noting that a party may decide to forego seeking a preliminary injunction for a variety of reasons having nothing to do with its view of the merits."  *Verinata Health*, 2014 WL 121640, at *3 (collecting

cases).  At the same time, some courts have found that "failure to file for a preliminary injunction . . . suggests that monetary damages will adequately compensate Plaintiff should Defendants be found liable for patent infringement."  *Autoalert, Inc. v. Dominion Dealer Sols., LLC*, No. SACV 12-1661-JST, 2013 WL 8014977, at *3 (C.D. Cal. May 22, 2013).

Assuming that Trusted Knight and IBM *are* properly considered direct competitors, that factor would tilt in Trusted Knight's favor, but because the other three factors (the timing of the petition for review, the timing of the request for the stay, and the status of review proceedings) favor a stay; this factor tips only moderately in favor of Trusted Knight and against a stay.  *See, e.g.*, *Avago Techs.*, 2011 WL 3267768, at *6 (finding "the prejudice factor to weigh moderately against granting a stay" where no preliminary injunction was filed and parties to lawsuit were competitors).

On balance, the factors favoring a stay predominate.  *See, e.g.*, *Verinata Health*, 2014 WL 121640, at *4 (granting stay where two out of three factors tiled in favor of stay); *Cypress Semiconductor*, 2014 WL 5021100, at *5 ("Balancing the result of the prejudice analysis against the two other factors that weigh somewhat in favor of a stay—simplification of the issues and the stage of the case—the Court finds that a stay as to all of the patents at issue is warranted.").

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** IBM's Motion to Stay pending IPR.  The parties are directed to file a joint status report 30 days following a decision from the PTO.

This order disposes of Docket No. 99.

**IT IS SO ORDERED**.

Dated: August 31, 2020

EDWARD M. CHEN
United States District Judge